IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
_____
                               )
NATIONAL UNION FIRE INSURANCE   )
COMPANY OF PITTSBURGH, PA,      )
                               )
              Plaintiff,        )
                               )
         vs.                    )   Civ. No. 11-00254 ACK-RLP
                               )
SIMPSON MANUFACTURING COMPANY,  )
et al.,                         )
                               )
              Defendants.       )
_____)
```

ORDER STAYING PROCEEDINGS

I. PROCEDURAL AND FACTUAL BACKGROUND[1]

Invoking the Court's diversity jurisdiction, Plaintiff National Union Fire Insurance Company of Pittsburgh, PA, has filed a complaint for declaratory relief. (Compl. ¶ 7, ECF No. 1; see also Am. Compl. ¶ 7, ECF No. 35.[2]) National Union seeks, among other things, a declaration that it need not defend or indemnify Defendants Simpson Manufacturing Company, Inc., Simpson

_____

[1] The facts as recited in this order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

[2] National Union filed an amended complaint on July 15, 2011. (ECF No. 35.) The amended complaint is identical to the originally filed complaint except for the correction of a typographical error in the prayer for relief. The parties stipulated to have the previously filed motion to dismiss apply to the amended complaint. (ECF No. 34.)

Strong-Tie Company, Inc., and Honolulu Wood Treating LLC (collectively "the Simpson parties") in four state-court actions. (Am. Compl. ¶¶ 18-21.)

The state-court actions generally concern "allegedly defective hurricane strap tie hold downs" that were "manufactured by Simpson Strong-Tie, sold by Simpson Manufacturing, distributed by Honolulu Wood, and utilized in the residences constructed" at the Ocean Pointe Development in ʻEwa Beach.  (Id. ¶ 15.)  The hurricane ties have allegedly begun "to prematurely corrode and rust causing cracking, spalling and other damage to the implicated homes."  (Id. ¶ 24.)

National Union claims that it has no duty to defend or indemnify the defendants because the "underlying claims against Simpson and Honolulu Wood do not constitute 'Property Damage' caused by an 'Occurrence' as those terms are defined in the Policies."  (Id. ¶ 28.)  To support this proposition, National Union relies on Group Builders, Inc. v. Admiral Insurance Co., 231 P.3d 67 (Haw. Ct. App. 2010), which held that "under Hawaiʻi law, construction defect claims do not constitute an 'occurrence' under a [commercial general liability] policy."  Id. at 73. National Union also seeks reimbursement for the defense costs it has expended so far.  (Compl. at 9-10.)

Defendants have moved the Court to dismiss the action. (Mot. at 2., ECF No. 10.)  Defendants argue that the Court should

decline to exercise jurisdiction over the case because there are "four parallel actions currently pending in the Hawaii state court . . . which will adjudicate facts relevant and/or potentially relevant to the determination of this action, including the existence of any property damage and the cause of any such property damage." (Id. at 2-3.)

Defendants further argue that "the adjudications requested by Plaintiff would require the Court to address unsettled questions of Hawaii law," including, for example, the continued viability of Group Builders and its applicability to manufacturers and distributors. (Id. at 3, 16-20.) Among other things, Defendants note the Hawaii State Legislature's recent excoriation of the Group Builders decision in H.B. 924 § 1 ("[T]he Group Builders decision creates a public policy crisis that only the State is in a position to remedy.").[3]

In the alternative, Defendants request that the Court either stay the action pending the outcome of some or all of the state-court actions or transfer the case to the Northern District of California, where another case, Fireman's Fund Insurance Co. v. Hartford Fire Insurance Co., No. CV 11 1789 SBA, is pending. Like this case, Fireman's Fund involves Defendants' insurance

---

[3] H.B. 924 was passed by the Legislature on May 3, 2011, and signed by the Governor on June 9, 2011.  See http://www .capitol.hawaii.gov/measure_indiv.aspx?billtype=HB&billnumber =924.  At the time of this writing, the bill has not yet been codified in the Hawaii Revised Statutes.

coverage with regard to the Ocean Pointe development.  (Mot. Mem. at 30-31.)

National Union filed a memorandum in opposition to Defendants' motion, and Defendants filed a reply in support. (ECF Nos. 36, 38.)  The Court held a hearing on the motion on October 6, 2011.  At the hearing, both parties acknowledged that staying the proceedings would be within the Court's discretion. After the hearing, the parties filed supplemental memoranda concerning matters that were raised at the hearing.  (ECF Nos. 44, 45.)

The Court will STAY proceedings in this case pending the outcome of certain state-court cases that will resolve relevant factual and legal issues.

## II. DISCUSSION

### A.        Related Cases

There are several pending cases concerning the Ocean Pointe development.  The parties are familiar with the collection, and the Court will not detail it here.  Three of those cases, however, are particularly relevant to the Court's analysis of this motion, and so the Court will briefly describe them.

### 1.        Coastal Construction Co. v. North American Specialty Insurance Company

The first case is currently pending in Hawaii state court.  It has twice been removed to this federal court, and twice been remanded for lack of diversity jurisdiction.[4]  When the case was last in this district, it was numbered Civ. No. 11-00115 HG-BMK.  The most recent remand took place on May 24, 2011, when the district court adopted the magistrate judge's recommendation that the case be remanded.  (ECF No. 55[5] (adopting ECF No. 46).)

The original complaint appears to have been filed in state court on February 25, 2010, which was more than one year ago.  (ECF No. 1-1 at 1.)  It therefore appears to the Court that a third attempt at removal would be time-barred, and that the case will remain in state court from this point forward.  See 28 U.S.C. § 1446 ("[A] case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.").

The instant action is partially distinct from Coastal, not least because there is complete diversity in this case whereas there is not in Coastal.  The issues in the cases are also partially distinct.  For example, the Court's understanding is that Coastal will not address whether Hawaii or California law

---

[4] The second attempt at removal came after certain claims had been severed from the original action.

[5] The ECF numbers cited in this section are those in the dockets for the three discussed cases, respectively.

governs the National Union insurance policies, but that question is before the Court in this case.  And assuming that Hawaii law applies and that Group Builders retains any viability, Coastal will not address the applicability of Group Builders to manufacturers and distributors.  An additional distinction between this case and Coastal is that none of the parties to this action are also parties to the Coastal action.[6]

Yet Coastal will address certain legal issues that are common to both cases.  Like Defendants here, Coastal Construction claims that its insurer should defend and potentially indemnify it in the state-court actions involving the Ocean Pointe development.  (ECF 1-1 at 11.)  Like National Union, North American Specialty contends that it has no duty to defend or indemnify based in part on Group Builders.  There are also common issues of fact, as the underlying actions in both this case and Coastal arise from the same alleged construction defects at the Ocean Pointe development.

---

[6] The parties are engaged with the Coastal parties in other actions related to the Ocean Pointe development.  Coastal Construction is one of the subcontractors that was responsible for installing the Simpson products at issue in the underlying actions.  (Mot. Mem. at 5.)  Certain of the Defendants have filed third-party complaints against Coastal in the underlying actions, for example, and NAS has sued certain of the Defendants seeking subrogation.  National Union has been involved with Defendants' representation in those matters.  (See Mot. Mem. at 5-7 (describing the underlying actions); Compl. at 9-10 (seeking reimbursement for "the amount [National Union] has forwarded . . . to defend any defendant in the Underlying Actions").

Indeed, the presence of common issues of law in fact in <u>Coastal</u> has already led one federal court in this district to stay a declaratory judgment action.  To that case the Court now turns.

### 2.      TIG Insurance Co. v. Haseko Homes, Inc.

The second case to discuss is currently pending (and stayed) in this district court.  <u>See</u> <u>TIG Ins. Co. v. Haseko Homes, Inc.</u>, Civ. Nos. 10-00107 DAE-KSC, 10-00146 DAE-KSC, and 10-00575 DAE-KSC, 2011 WL 264315 (D. Haw. Jan. 26, 2011) (order staying case).[7/]  <u>TIG</u> "is a consolidated action for declaratory relief, which involves potential insurance liability for allegedly defective construction work . . . in the Ocean Pointe Project."  <u>Id.</u> at *2.  The parties include Haseko Homes, Inc., and Haseko Construction, Inc. (the general contractor, described collectively in <u>TIG</u> as "Haseko"); Coastal Construction, Inc., and Foundations Hawaii, Inc. (two subcontractors); Marsh U.S.A., Inc. (Haseko's insurance broker); and insurers North American Specialty Insurance Company, Clarendon America Insurance Company, and TIG Insurance Company.  Many of the parties to the <u>TIG</u> action are also parties to the <u>Coastal</u> action described above.  Like National Union in this case, the insurance companies who are

_____

[7/] This consolidated case was subsequently assigned to Judge Kobayashi on January 28, 2011.  (ECF No. 134.)  The current case numbers are Civ. Nos. 10-00107 LEK-KSC, 10-00146 LEK-KSC, and 10-00575 LEK-KSC.

parties to the TIG action seek declarations that they need not provide a defense or coverage to their insured.  See id. at *5-9.

The pendency of the Coastal action led the TIG court to stay proceedings.  See id. at *9-18.  Although there are distinctions between this case and TIG, The Court's decision in this case largely follows TIG.  The reasoning of that decision therefore will be discussed in more detail below.

### 3.    Fireman's Fund Insurance Co. v. Hartford Fire Insurance Co.

The last case to describe is Fireman's Fund Insurance Co. v. Hartford Fire Insurance Co., which is case number CV 11 1789 SBA in the Northern District of California.

The complaint in Fireman's Fund alleges that Fireman's Fund issued general liability policies to Simpson that were effective from January 1, 1998, to January 1, 2004, and that Hartford issued general liability policies to Simpson that were effective from January 1, 2008, to January 1, 2010.  (ECF No. 1 ¶¶ 6-7.)[8/]

The complaint in Fireman's Fund refers to the same underlying actions that are referred to in this case, and alleges that Fireman's Fund has been providing a defense for Simpson and Honolulu Wood Treating Company in those underlying actions.  (Id.

---

[8/] National Union, the plaintiff in this case, provided policies between January 1, 2004, and March 1, 2009.  (Compl. ¶¶ 9-14.)

-8-

¶¶ 18-19.)  The complaint notes that the defense of Simpson has been provided by both Fireman's Fund and "another co-insurer of Simpson, Chartis."[9/]  (Id. ¶ 18.)  Fireman's Fund seeks a declaration that Hartford must join in the defense under the terms of its insurance policy.  (Id. ¶ 25 ("Hartford has an obligation and duty to defend Simpson and HTW along with Fireman's Fund and Chartis.").)

The questions at issue in this case will be addressed in Fireman's Fund.  The defendants in this case have intervened in Fireman's Fund, and their complaint in intervention indicates that they will seek to demonstrate both that California law governs the insurance policies at issue and that, if Hawaii law governs, that Group Builders does not absolve Hartford of its duties to defend and indemnify them in the underlying actions. In other words, Fireman's Fund will address the same issues that this case involves.  Neither Chartis nor National Union are currently parties to the Fireman's Fund case.  At the hearing, Defendants' attorney indicated that Defendants will bring National Union into the Fireman's Fund case by way of a complaint if this Court does not transfer this case to the Northern District of California.

**B.**       **Discretion under the Declaratory Judgement Act**

---

[9/] National Union is a wholly owned subsidiary of Chartis, Inc.  (Corporate Disclosure Statement, ECF No. 5.)

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  District courts have discretion in whether to exercise jurisdiction under the Declaratory Judgment Act.  <u>See</u> <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 289 (1995); <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 494-95 (1942).  The bounds of that discretion are set forth in the Ninth Circuit's opinion in <u>Gov't Emps. Ins. Co. v. Dizol</u>, 133 F.3d 1220 (9th Cir. 1998) (en banc).  The court in <u>Dizol</u> set forth a number of factors for a district court to consider.  Specifically:

> The <u>Brillhart</u> factors remain the philosophic touchstone for the district court.  The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation.  If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court.  The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief.  Nonetheless, federal courts should generally decline to entertain reactive declaratory actions.

Id. at 1225 (footnote and citations omitted).  A district court

may also weigh "other considerations," such as:

> whether the declaratory action will settle
> all aspects of the controversy; whether the
> declaratory action will serve a useful
> purpose in clarifying the legal relations at
> issue; whether the declaratory action is
> being sought merely for the purposes of
> procedural fencing or to obtain a "res
> judicata" advantage; or whether the use of a
> declaratory action will result in
> entanglement between the federal and state
> court systems.  In addition, the district
> court might also consider the convenience of
> the parties, and the availability and
> relative convenience of other remedies.

Id. at 1225 n.5 (quoting Am. States Ins. Co. v. Kearns, 15 F.3d

142, 145 (9th Cir. 1994) (Garth, J., concurring)).  Finally,

"there is no presumption in favor of abstention in declaratory

actions generally, nor in insurance coverage cases specifically."

Id. at 1225 ("We know of no authority for the proposition that an

insurer is barred from invoking diversity jurisdiction to bring a

declaratory judgment action against an insured on an issue of

coverage.") (quoting Aetna Cas. & Sur. Co. v. Merritt, 974 F.2d

1196, 1199 (9th Cir. 1992)).  As the court noted:

> [W]hen other claims are joined with an action
> for declaratory relief (e.g., bad faith,
> breach of contract, breach of fiduciary duty,
> rescission, or claims for other monetary
> relief), the district court should not, as a
> general rule, remand or decline to entertain
> the claim for declaratory relief.  If a
> federal court is required to determine major
> issues of state law because of the existence
> of non-discretionary claims, the declaratory

action should be retained to avoid piecemeal
litigation.

Id. at 1225-26 (footnote and citations omitted).

On balance, as will be discussed in more detail in the

following sections, the Court finds that the above factors weigh

in favor of staying this case pending the resolution of the

insurance coverage questions at issue in the Coastal case.[10]

**1.      Avoidance of Needless Determination of State
          Law Issues**

As this Court's analysis closely follows that of Judge

Ezra's decision in TIG, the Court will quote portions of that

decision at length, to better illustrate how this court's

analysis differs based on those circumstances that have changed

since the TIG decision was issued (specifically, the subsequent

remand of the Coastal case to state court and the issuance and

adoption of H.B. 924).  As the TIG decision states, the factor

concerning needless determination of state law issues focuses on:

> unsettled issues of state law, not
> fact-finding in the specific case.  The Ninth
> Circuit has held that a district court
> needlessly determines state law when: (1) the
> state law issue in question is the subject of

_____

[10] The Court is not aware of any pending case that will
likely resolve theses questions before they will be resolved in
Coastal.  At the hearing, one of the lawyers for the Simpson
parties averred that he is counsel for a party involved in
another case, Island Insurance Co. v. Metcalf Construction Co.,
Civ. No. 1CC11-1-000978, which is pending in state court and
involves the continuing viability of Group Builders, but that he
anticipates that Coastal will be resolved before Island
Insurance.

> a parallel proceeding; (2) the area of law is
> expressly left to the states by Congress; and
> (3) there is no compelling federal interest.
> When the sole basis for federal jurisdiction
> is diversity of citizenship, the federal
> interest is at its nadir and the <u>Brillhart</u>
> policy of avoiding unnecessary declarations
> of state law is especially strong.

<u>TIG</u>, 2011 WL 264315, at *10 (citations and internal quotation

marks omitted).[11/]   Insurance law is an area of law that Congress

has expressly left to the states.   <u>See</u> 15 U.S.C. §§ 1011-12.   And

this is a diversity case with no federal question presented.

There therefore "is no compelling federal interest here."   <u>Id.</u> at

14.

The remaining issues are whether Hawaii law is

unsettled in the first place and whether the state law at issue

is the subject of a parallel proceeding.

<u>a.</u>        <u>Unsettled State Law</u>

Although the <u>TIG</u> court ultimately decided to stay

proceedings based on other factors, it determined that there was

"sufficient guidance" to resolve the questions presented by the

<u>Group Builders</u> decision and that, in any event, it "ha[d] the

option of certifying a question to the Hawaii Supreme Court" if

need be.   <u>Id.</u> at *11.   The Court therefore was "not persuaded

---

[11/] The Ninth Circuit case referred to in the quotation is
<u>Cont'l Cas. Co. v. Robsac Indus.</u>, 947 F.2d 1367, 1371 (9th Cir.
1991) (<u>overruled in part on other grounds</u> by <u>Dizol</u>, 133 F.3d at
1227).

-13-

that it [was] incapable of deciding these insurance coverage questions." Id.

Since the TIG decision was issued, H.B. 924 was passed by the Legislature and signed by the Governor.  Moreover, the insurance coverage issues in Coastal were severed in the state court, removed to this district, and finally remanded back to state court.  Both of these events lead the Court to analyze the question of whether Hawaii law is unsettled differently than Judge Ezra did in TIG.[12/]  First of all, as the parties acknowledged at the hearing, the questions about Hawaii insurance law raised by H.B. 924 should be answered first in the Hawaii state courts.  The bill states that "the meaning of the term 'occurrence' shall be construed in accordance with the law as it existed at the time that the insurance policy was issued," H.B. 924 § 2, but what exactly that means is unsettled at this point.[13/]

_____

[12/] As the Simpson parties note, the question of whether an insurer can obtain reimbursement for defense costs it had no duty to incur is also unsettled under Hawaii law.  See Burlington Ins. Co. v. Panacorp, Inc., 758 F. Supp. 2d 1121, 1133 (D. Haw. 2010).

[13/] At the hearing, National Union's counsel initially suggested that Group Builders changed nothing about Hawaii insurance law, such that rolling back to "the law that existed at the time that the insurance policy was issued" would nonetheless lead to the same result that was reached in Group Builders.  (See also Opp'n at 23 n.3 ("Group Builders did not change the law in Hawaii.").)  That position is incompatible with the Legislature's extreme concern about the effect of that case.  See H.B. 924 § 1 ("Group Builders . . . creates uncertainty in the construction
(continued...)

Second, while Judge Ezra mentioned certifying a question to the Hawaii Supreme Court, at the time he was anticipating that the insurance coverage issues in Coastal might be severed and removed to this district, and ultimately consolidated with TIG.  See TIG, 2011 WL 264315, at *17.  Indeed, as discussed above, Coastal did make a brief return to this district after the TIG decision was issued, but now it has been remanded to the state court and it appears that it will stay there.  Staying this case pending the resolution of Coastal is preferable under Dizol to retaining the case and certifying a question that is already set to be addressed in state court.[14]

### b.        Parallel Proceeding

"[F]or a parallel proceeding to exist, the actions must arise from the same factual circumstances, there must be overlapping factual questions raised in the actions, or the same issues must be addressed by both actions."  TIG, 2011 WL 264315

---

[13] (...continued) industry, and invalidates insurance coverage that was understood to exist and that was already paid for by construction professionals.").

[14] The decision in TIG to stay the case rather than dismiss it seems to have been based in large part on the possibility that the Coastal case would be removed to federal court and consolidated with TIG.  That is no longer possible, but this Court will nonetheless stay rather than dismiss this action because there are several issues, such as whether Group Builders would apply to manufacturers (if it is still good law at all), that will not be addressed in Coastal or the other pending state court proceedings.

at *13 (citing <u>Golden Eagle Ins. Co. v. Travelers Cos.</u>, 103 F.3d 750, 755 (9th Cir. 1996) ("It is enough that the state proceedings arise from the same factual circumstances.") (<u>overruled in part on other grounds by</u> <u>Dizol</u>, 133 F.3d at 1227)).[15/]   The <u>Coastal</u> action is parallel to this case for many of the same reasons that <u>Coastal</u> is parallel to <u>TIG</u>. Specifically, as it was in <u>TIG</u>, "[i]t is readily apparent that at the very least, the <u>Coastal</u> Action and the instant . . . action arise from the same factual circumstances, namely the allegedly defective construction work that occurred at the Ocean Pointe development."  <u>TIG</u>, 2011 WL 264315 at *12.

---

[15/] National Union argues that the Ninth Circuit has expanded the concept of "parallel" far beyond the Supreme Court's intentions, and desires that the Court ignore Ninth Circuit precedent in favor of National Union's interpretation of <u>Brillhart</u> and <u>Wilton</u>.  National Union's position is that the Court may do so because <u>Dizol</u> altered the concept of what makes a state action "parallel" in the Ninth Circuit when it overruled several prior cases.  But the Ninth Circuit's overruling of its previous precedent was narrow.  <u>Dizol</u> overruled prior precedent only to the extent that the same contained "suggestions to the contrary" of <u>Dizol</u>'s holdings that "when constitutional and statutory jurisdictional prerequisites to hear a case brought pursuant to the Declaratory Judgment Act have been satisfied, the district court may proceed with consideration of the action without sua sponte addressing whether jurisdiction should be declined"; that the Ninth Circuit is "not obligated, sua sponte, to decide whether a district court abused its discretion in exercising discretionary jurisdiction when neither party has raised the issue"; and that "[i]f a party has properly raised the issue before the district court, the court must record its reasoning for exercising jurisdiction in accordance with <u>Brillhart</u> and the general considerations we have described herein."  <u>Dizol</u>, 133 F.3d at 1227.

The Court's analysis is distinct from TIG in that in TIG, the majority of the parties were also parties to the Coastal action, whereas the parties in this case are not parties to the Coastal action.  But "Ninth Circuit precedent is clear that [these parties] need not be present in the Coastal Action for it to be considered a parallel state proceeding."  Id. at * 13 (citing Employers Reinsurance Corp. v. Karussos, 65 F.3d 796, 798, 800 (9th Cir. 1995) (overruled in part on other grounds by Dizol, 133 F.3d at 1227)).[16]

This case is also distinct from TIG because, as mentioned before, the circumstances concerning the Coastal action have changed.  The TIG order noted that it was possible, if "the motions to dismiss or sever [in Coastal] were denied, and the insurance coverage claims in the Coastal Action proceed, [that] this Court and the Hawaii state court would be called upon to decide overlapping issues of Hawaii insurance law."  Now, the insurance coverage issues in Coastal have been remanded to state

---

[16] National Union notes that under Hawaii law, as a matter of public policy, an insurer cannot be a party to the suit deciding the underlying tort liability.  But that concept does not preclude a determination that this action is parallel with Coastal; the Ninth Circuit has repeatedly noted that proceedings can be parallel where a party "could have presented the issues that it brought to federal court in a separate action to the same court that will decide the underlying tort action."  E.g., Polido v. State Farm Mut. Auto. Ins. Co., 110 F.3d 1418, 1423 (9th Cir. 1997) (emphasis added) (overruled in part on other grounds by Dizol, 133 F.3d at 1227).

court, such that if this Court were to proceed, it would assuredly decide overlapping issues.

National Union relies heavily on <u>Allstate Ins. Co. v. Davis</u>, 430 F. Supp. 2d 1112 (D. Haw. 2006), but that case is not analogous to this one. <u>Davis</u> involved an alleged murder, and the Court stated that there were no "novel or unsettled matters of state law." <u>Id.</u> at 1120. That is not the case here; the state of Hawaii insurance law is very much in flux given <u>Group Builders</u> and H.B. 924. Moreover, the "state court" in <u>Davis</u> "ha[d] no reason to consider" the insurance coverage questions. Here, insurance coverage is at issue in other cases, as described above. The Court acknowledges that the specific policies issued by National Union are not at issue in the underlying actions, but the same policy language, factual background, and legal questions are at issue in those cases.

> **2.       Declaratory Actions as a Means of Forum Shopping**

Under <u>Brillhart</u>, as described by <u>Dizol</u>, a district court "should discourage litigants from filing declaratory actions as a means of forum shopping." <u>Dizol</u>, 133 F.3d at 1225. The Court finds this factor neutral in determining whether to exercise its discretionary jurisdiction over this case. While National Union filed this action years after the underlying actions commenced in state courts (and months after the Legislature began considering H.B. 924), the Simpson parties

filed their complaint in intervention for declaratory relief in the <u>Fireman's Fund</u> case even later, and have indicated that they intend to bring National Union into that case. It does not appear that any party is any worse an offender than any other party in terms of filing declaratory actions as a means of forum shopping.

### 3. Avoidance of Duplicative Litigation

The Court agrees with the TIG decision that the policy of avoidance of duplicative litigation weighs in favor of staying this case pending the resolution of <u>Coastal</u>. <u>See</u> 2011 WL 264315 at *16-17. This factor weighs less heavily in favor of staying the case then it did in <u>TIG</u>, as the parties to this case are not parties to the <u>Coastal</u> action. Yet there are factual and legal determinations to be made in the underlying actions that will be common to all of the cases that have arisen out of the Ocean Pointe development. <u>See</u> <u>id.</u>; <u>see also</u> <u>Phoenix Assurance</u>, 125 F. Supp. 2d at 1222 ("Should this court exercise its discretionary jurisdiction, it will very likely have to decide numerous questions of Hawaii insurance law. . . . Many of these very same issues are issues to be decided in pending state court litigation. . . . Accordingly, the Court finds that avoidance of duplicative litigation favors declining jurisdiction in this action.").

### 4. Presumption That Entire Suit Should Be Heard in State Court

According to <u>Dizol</u>'s explanation of the <u>Brillhart</u> factors, "[i]f there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." <u>Dizol</u>, 133 F.3d at 1225. National Union relies on this proposition to assert that there are no parallel proceedings at all, because National Union is not a party to any of the state actions. (Opp'n at 9–12.) Specifically, National Union claims that the Ninth Circuit's historical interpretation of the term "parallel" was at odds with <u>Brillhart</u>, and that the Ninth Circuit condensed the meaning of the term "parallel" in <u>Dizol</u> so it applies only when the same parties are involved in both state and federal proceedings. (Opp'n at 10–12.) As discussed above, the Ninth Circuit's overruling of its precedent in <u>Dizol</u> was narrow, and did not change the Ninth Circuit's definition of parallel. <u>See</u> <u>supra</u> Part II.B.1.b.

The condition for the presumption, that "there are parallel state proceedings involving the <u>same issues and parties</u>," implies that some "parallel state proceedings" do <u>not</u> involve the same issues and parties. This reading is consistent with the Ninth Circuit's prior case law determining that the term "parallel" encompasses more than just claims between the same parties. <u>See</u> <u>TIG</u>, 2011 WL 264315, at *13

-20-

("Ninth Circuit precedent is clear that TIG need not be present in the Coastal Action for it to be considered a parallel state proceeding."); see also id. (emphasizing the phrase "same issues and parties" in quoting Dizol).

In any event, all that Dizol says is that the described situation gives rise to a "presumption."  In other words, when "there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed," a district court's discretion to hear the declaratory action is curbed: the described situation so strongly favors dismissing a case that a presumption of dismissal arises and must be overcome.  But that does not mean that in the absence of this type of parallel proceedings a district court must exercise its discretionary jurisdiction over the declaratory judgment action. All it means is that there is no presumption of dismissal.  See Phoenix Assurance Plc v. Marimed Found. for Island Health Care Training, 125 F. Supp. 2d 1214, 1223 (D. Haw. 2000) ("Furthermore, even if the lack of a mirror-image state court proceeding meant that there was not a parallel proceeding, the Ninth Circuit in Dizol made clear that whether or not there is a parallel proceeding is merely one factor to be considered in addition to the three Brillhart factors when deciding whether to accept or decline jurisdiction.  See Dizol, 133 F.3d at 1225. Finally, the Supreme Court has left this question untouched, and

therefore open to the district courts and courts of appeals to decide.  See Wilton, 515 U.S. 277, 290 (leaving question of a court's discretion to not exercise jurisdiction open in 'cases in which there are no parallel state proceedings').").

National Union cites another case from this district in support of its claim that the Ninth Circuit's interpretation of the term "parallel" is at odds with Brillhart, but the analysis in that case is consistent with this Court's analysis in this order.  That case questioned whether there might be conflict between Dizol and prior Ninth Circuit precedent, but concluded, as this Court does, that "a presumption in favor of declining jurisdiction occurs only" in the situation described in Dizol. See Nautilus Ins. Co. v. K. Smith Builders, Ltd., Civ. No. 09-00509 JMS-BMK, 2010 WL 346457, at *5 n.2 (D. Haw. Jan. 29, 2010).

The presence of a presumption is immaterial in this case, as it was in both TIG and Nautilus, because the Court would stay the case with or without a presumption.  See TIG, 2011 WL 264315 at *13 n.14 ("The parties raise various arguments regarding this presumption.  Because the Court determines that the Brillhart factors weigh in favor of granting a stay, even without a presumption, the Court declines to reach the issue."); Nautilus, 2010 WL 346457, at *5 n.2 ("[E]ven if the earlier line of Ninth Circuit cases is still good law and this action and the underlying action are nominally parallel because they both relate

to [the same] injuries, the court would still maintain
jurisdiction over this action upon consideration of the other
Brillhart factors.").

### 5.    Other Dizol Factors

According to Dizol, in addition to the
Brillhart factors discussed above, the Court may also weigh
"other considerations," such as:

> whether the declaratory action will settle
> all aspects of the controversy; whether the
> declaratory action will serve a useful
> purpose in clarifying the legal relations at
> issue; whether the declaratory action is
> being sought merely for the purposes of
> procedural fencing or to obtain a "res
> judicata" advantage; or whether the use of a
> declaratory action will result in
> entanglement between the federal and state
> court systems.  In addition, the district
> court might also consider the convenience of
> the parties, and the availability and
> relative convenience of other remedies.

133 F.3d at 1225 n.5.

The Court finds that these factors "generally weigh in
favor of the Court retaining jurisdiction but staying the
proceedings." TIG, 2011 WL 264315 at *18.  The Court generally
agrees with the following rationale expressed in TIG:

> If both this Court and the Hawaii state court
> were to reach the merits of the insurance
> coverage issues, there would be a genuine
> risk of inconsistent judgments, piecemeal
> litigation, and ultimately entanglement
> between the federal and state court systems.

Id.  Specifically, the Court finds that a declaratory action
would not settle all aspects of the controversy.  The Court also
finds that the benefit of any clarification of the legal
relations at issue would be outweighed by the inconvenience and
inefficiency involved with going forward with this case.
Finally, the Court finds that the remaining Dizol factors are
neutral.

**C.**          **Motion to Transfer Venue**

          As an alternative to dismissing or staying the case,
Defendants have moved the Court to transfer the case to the
Northern District of California, where a related case is pending.
Indeed, at the hearing, Defendants' counsel suggested that he
would prefer that the Court transfer the case rather than stay
it.  The Court, however, has decided to stay the case instead of
transferring it.

          Even if a district court is a proper venue for a case
under 28 U.S.C. § 1391, the district court may transfer the case
to another district for the convenience of the parties and
witnesses.  See 28 U.S.C. § 1404(a).  Section 1404(a) states:
"For the convenience of parties and witnesses, in the interest of
justice, a district court may transfer any civil action to any
other district or division where it might have been brought."  28
U.S.C. § 1404(a).  "The purpose of this section is to prevent the
waste of time, energy, and money and to protect litigants,

witnesses and the public against unnecessary inconvenience and expense." Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp. 1134, 1139 (D. Haw. 1997) (internal quotation marks and citations omitted).

In considering a motion to transfer venue, a district court is to conduct an "individualized, case-by-case consideration of convenience and fairness." Jones, 211 F.3d at 498. The factors for a court to consider include:

> (1) the location where the relevant
> agreements were negotiated and executed, (2)
> the state that is most familiar with the
> governing law, (3) the plaintiff's choice of
> forum, (4) the respective parties' contacts
> with the forum, (5) the contacts relating to
> the plaintiff's cause of action in the chosen
> forum, (6) the differences in the costs of
> litigation in the two forums, (7) the
> availability of compulsory process to compel
> attendance of unwilling non-party witnesses,
> and (8) the ease of access to sources of
> proof. Additionally, the presence of a forum
> selection clause is a "significant factor" in
> the court's § 1404(a) analysis. [And] the
> relevant public policy of the forum state, if
> any, is at least as significant a factor in
> the § 1404(a) balancing.

Id. at 498-99. "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (citation omitted). The moving party ultimately has the burden of showing that an alternative forum is the more appropriate forum for the action. Jones, 211 F.3d at 499.

The Jones factors favor retaining this case, despite the pendency of the Fireman's Fund case in the Northern District of California.  Most of the factors are neutral or do not weigh heavily one way or the other.  Of the factors that do weigh heavily, Hawaii's strong public policy interest in insurance law in the construction context, which was expressly stated in H.B. 924, outweighs the risks and inefficiencies associated with proceeding in parallel with the Fireman's Fund case that is pending in the Northern District of California.

The Court begins with the factor that most strongly supports transfer.  Assuming that the Northern District of California elects to exercise its discretionary jurisdiction in Fireman's Fund, that case will resolve the question whether the events alleged in the underlying actions were caused by an "occurrence," as that term is defined in a nearly identical insurance policy sold by the same broker to the same company.  The case will then allocate responsibility for coverage across the three insurers that provided insurance to Defendants in the relevant timeframe.  The coverage issue raised in this case is the same as that raised in the California case; in Plaintiff's own words, "[t]he basis for National Union's position is that, under Hawaii law, the four underlying lawsuits do not allege an 'occurrence' as required by the National Union policies."  (Opp'n at 1.)  Based on the pleadings, the same question is at issue in

<u>Fireman's Fund</u>, although at the hearing Simpson's counsel averred that the <u>Fireman's Fund</u> defendant has abandoned its argument that it need not provide coverage under <u>Group Builders</u>.

Litigating the issue in this forum in parallel with the ongoing litigation in California would be duplicative and therefore costly, both to the parties and to the judiciary.  It would also risk inconsistent judgments as to Simpson's insurance coverage with regard to the Ocean Pointe Development.  This factor supports transferring the case to the Northern District of California.  Upon transfer, this case could be consolidated with <u>Fireman's Fund</u>, allowing Simpson's insurance coverage with regard to the Ocean Pointe development to be resolved in a single forum at the same time.  Indeed, at the hearing, Defendants' counsel indicated that if this Court does not transfer this case to the Northern District of California, then Defendants will bring National Union into the <u>Fireman's Fund</u> action.  On the other hand, the California case could be transferred to the District of Hawaii—and evidently that was considered and a motion to that effect was filed, but according to the Simpson parties' counsel the motion was withdrawn after H.B. 924 was enacted.  In any event, if this Court retains this case, duplicative litigation may ensue.[17]

_____

[17] The Court is mindful that similar insurance coverage questions are also pending in the Hawaii state court in the
(continued...)

The "relevant public policy of the forum state . . . is at least as significant a factor in the § 1404(a) balancing." Jones, 211 F.3d at 499.   Defendants have identified a case from a federal court in California that specifically references the Group Builders decision in noting California's public policy interest in protecting the insurance benefits of its residents. See Ameron Int'l Corp. v. Am. Home Assurance Co., No. CV 11-1601 CAS (AGRx), 2011 WL 2261195 (C.D. Cal. June 6, 2011).   The Ameron court identified "a material difference of law between California and Hawaii on the question of what constitutes an 'occurrence'" in light of Group Builders, and compared California's "interest in protecting [its residents] from the unfair practices of insurers" and "interest in applying its law to interpretation of . . . policies [that were formed in California]" to Hawaii's interests, which stemmed from being "the site of the underlying loss and the [underlying legal action]," as well as from, in the Ameron court's view, Hawaii's desire to "protect the interest of insurers."   Id. at *5-9.   The court found that Hawaii's interest in protecting insurers was attenuated in that case because none

---

[17]/ (...continued)
Coastal case.   If Hawaii law governs the insurance questions in this case, as National Union argues, then there may be duplicative litigation between Fireman's Fund, on one hand, and Coastal, on the other, no matter whether this Court retains or transfers the case.

of the insurers involved in the action were Hawaii residents.
See id. at *9.

Yet the Hawaii legislature has specifically denounced
Group Builders in very strong terms and has sought to eliminate
the uncertainty caused by that decision.  See H.B. 924 § 1
("[T]he Group Builders decision creates a public policy crisis
that only the State is in a position to remedy.").  Although not
as clearly drafted as it might be, H.B. 924 does state that
"[t]he purpose of this Act is to restore the insurance coverage
that construction industry professionals paid for and to ensure
that the good-faith expectations of parties at the time they
entered into the insurance contract are upheld."  Id. (emphasis
added).  The governor has signed the bill into law.  Two branches
of the Hawaii state government have therefore indicated a strong
public policy interest in insurance coverage in the construction
industry, which is "a vital component of Hawaii's economy" and
"one of the State's main economic drivers."  Id.  The state "can
ill-afford to cripple one of its most important economic
engines," the bill states, and therefore the "uncertainty in the
construction industry" caused by Group Builders, which
"invalidates insurance coverage that was understood to exist and
that was already paid for by construction professionals," must be
remedied.  Id.  The bill's excoriation of Group Builder's goes on
for several pages.  The "legislature finds that the Group

-29-

Builders decision directly affects the interests of the State,"
and that "the sudden invalidation of relied-upon insurance
coverage may be economically disastrous to contractors, building
owners, injured persons, and the general public." Id.

        In sum, Hawaii's public policy interest in insurance
coverage for the construction industry, as impacted by the Group
Builders decision, could not have been expressed any more
strongly.  The parties dispute the impact of Group Builders and
H.B. 924 and acknowledge the current uncertainty in Hawaii
insurance law as to what constitutes an "occurrence."  As the
state judiciary has not yet addressed the continuing viability of
Group Builders in light of H.B. 924, and as Defendants have
indicated that they intend to seek to apply California law to
these insurance policies, it appears to the Court that Hawaii's
public policy interest in this case provides compelling weight in
favor of retaining the case.

        The remainder of the factors are either neutral or only
mildly weigh in favor of or against transfer.

        First, there is no dispute that the relevant agreements
were negotiated and executed in the Northern District of
California, so that factor favors transfer.

        Second, the parties dispute what law governs the
insurance policies, but even if the case were transferred, the
transferee court would apply Hawaii's choice-of-law rules to

-30-

determine what law governs the insurance policies.   <u>See</u> <u>Newton v.</u> <u>Thomason</u>, 22 F.3d 1455, 1459 (9th Cir. 1994) (noting the "requirement that the transferee court follow the choice of law rules of the transferor court" when a case is transferred under 28 U.S.C. § 1404(a)).   The Court finds that this factor is neutral, in that a venue in California would be more appropriate if California law governs, but a venue in Hawaii would be more appropriate if Hawaii law governs.

Third, National Union filed suit in this district.   So the plaintiff's choice of forum weighs against transfer.

Fourth, both Simpson Manufacturing and Simpson Strong-Tie have their principal places of business in California. (Compl. ¶ 2.)   Simpson Strong-Tie is also a California corporation.   (<u>Id.</u>)   Honolulu Wood Treating LLC appears, from its web site, to have its principal place of business in Hawaii, but the company appears to be owned and controlled by a California resident.   (<u>Id.</u> ¶¶ 3-6.)   National Union "is a Pennsylvania corporation that maintains its principal place of business in New York, New York"; no strong contacts with either Hawaii or California are apparent.   (<u>Id.</u> ¶ 1.)   The Court finds that this factor is neutral, or weighs slightly in favor of transferring the case to California.

Fifth, the underlying factual circumstances, that is, the allegedly defective construction, took place in Hawaii.   The

circumstances surrounding the negotiation of the insurance policies took place in California.  But the Court considered those negotiations in analyzing the first <u>Jones</u> factor, which directs courts to consider "the location where the relevant agreements were negotiated and executed."  Therefore, this factor weighs in favor of retaining the case.

Sixth, neither party has identified any unwilling non-party witnesses, so this factor is neutral.

Seventh, neither party has specifically identified the sources of proof that will be necessary to the case.  From the context of this case, however, the Court determines that this factor is neutral.  The case may turn in part on the negotiations of the policies themselves.  Those negotiations took place in California.  On the other hand, the construction at issue took place in Hawaii, and sources of proof with regard to, for example, the cause and extent of the damage that occurred will likely be found here.

Eighth, the parties have acknowledged that there is no forum selection clause in the insurance policies, so this factor is neutral.

The Court will stay this case rather than transfer it to the Northern District of California because the Hawaii State Legislature's strongly stated public policy interest in insurance

coverage related to the state's construction industry weighs heavily against transfer.

**D.**          **Younger Abstention**

Defendants argue in the alternative that the Court should dismiss or stay the action under Younger v. Harris, 401 U.S. 37 (1971).  Generally, a court must abstain under Younger:

> [I]f four requirements are met: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that Younger disapproves.

San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose, 546 F.3d 1087, 1092 (9th Cir. 2008). "[W]hen each of an abstention doctrine's requirements are not strictly met, the doctrine should not be applied," and therefore "abstaining under Younger . . . [is] proper only if all four Younger requirements [are] strictly satisfied." AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1149 (9th Cir. 2007).

There are no federal constitutional issues involved with this case.  And as discussed above, this case implicates important state interests that are being addressed in state-initiated proceedings.  But this action, if allowed to continue,

would neither enjoin those proceedings nor have the practical effect of doing so.  Younger abstention would therefore be inappropriate.

The Court has, in the past, stayed a declaratory judgment action concerning insurance coverage under Younger.  See Burlington Ins. Co. v. Panacorp, Inc., 758 F. Supp. 2d 1121, 1137 (D. Haw. 2010).  In that case, however, there were ongoing proceedings in state court concerning the same questions of insurance coverage, between the same parties and under the same insurance policies.  See id. at 1126-27.  The Court found that allowing the federal case to proceed would have the effect of enjoining the state case based on collateral estoppel.[18]

That possibility does not arise in this case because neither National Union nor the Defendants are parties to any pending state-court action concerning the insurance policies at issue in this case.  While the Court has elected to stay the case pending state-court evaluations of Group Builders and H.B. 924, the state court would be free to make that evaluation even if this Court were to allow proceedings in this case to continue.

---

[18] In declaratory judgment actions, it is permissible to consider collateral estoppel and res judicata effects in determining whether to abstain under Younger.  See AmerisourceBergen, 495 F.3d at 1151 ("[A]bstention to avoid concurrent, duplicative litigation is available in some very limited circumstances—in particular, when the requested relief in federal court is a declaratory judgment.").

The requirements of <u>Younger</u> abstention are therefore not strictly met, so the Court cannot abstain under <u>Younger</u>.

### **III. CONCLUSION**

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendants' motion.  Specifically, the Court STAYS this case pending the resolution in the state courts of the insurance coverage issues at issue in the <u>Coastal</u> case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, November 7, 2011.



                                                       _____
                                                       Alan C. Kay
                                                       Sr. United States District Judge

<u>National Union Fire Insurance Company of Pittsburgh, PA, v. Simpson Manufacturing Company</u>, Civ. No. 11-00254 ACK-RLP: Order Staying Proceedings